### A. H. ANDREWS CO. v. MORGAN.   (No. 7706.)

(Supreme Court, Appellate Division, First Department.   November 12, 1915.)

EVIDENCE ☞460—PAROL EVIDENCE TO VARY WRITING.

 Defendant contracted in writing to purchase from plaintiff 750 "No. 102" opera chairs according to specifications thereto annexed; the contract further providing that any verbal statements or agreements incorporated therein should not be binding, and that that agreement should supersede all previous proposals. The specifications stated that the chairs were to be style No. 102, that the arm rests were to be "No. 15," the edge to be 1¼ inches thick, the seats "Reg. Squab," and the material used in upholstering and the color and kind "Imit. Leather No. 87," and that it was preferred that the average width should be 19 inches. There was nothing to show the height of the chairs, or the form, design, or dimensions (other than that they were to be 1¼ inches thick and preferably 19 inches wide), except by having recourse to the style of chairs manufactured by plaintiff and known by the number specified. The specifications further provided for delivery at a specified time, provided sample chairs that day ordered were approved by defendant on the day they were received. In the prior negotiations plaintiff's salesman exhibited to defendant's representatives sample chairs and a sample of the imitation leather used by plaintiff in upholstering. *Held*, that defendant was not bound by plaintiff's testimony tending to show that the sample chair submitted by plaintiff to defendant's representatives, and refused by them, had plaintiff's "No. 102" backs, plaintiff's regular squab seats, etc., but was entitled to show that the sample chair was not like the sample parts exhibited to his representatives, and represented to them to be the same as those described in the specifications, as the only theory upon which it might be said that the entire contract was reduced to writing was that the sale was in part by sample, and it was evident that the parties understood that the contract was not sufficiently complete or definite to preclude a misunderstanding, and that they contemplated that a sample chair should be first manufactured and exhibited to defendant.

 [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. ☞460.]

Appeal from Trial Term, New York County.

Action by the A. H. Andrews Company against Charles D. Morgan. From a judgment entered upon a verdict in favor of plaintiff, rendered

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by direction of the court, and from an order denying his motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

W. H. Gilpatric, of New York City, for appellant.

Ralph S. Rounds, of New York City, for respondent.

LAUGHLIN, J. This is an action to recover damages for breach of a contract by which the plaintiff, which is an Illinois corporation, was to manufacture, deliver, and install 750 opera chairs for the defendant's theater at Winnipeg, Manitoba. The breach assigned is the repudiation of the contract by the defendant before the manufacture of the chairs, and the recovery has been measured by the profits which the plaintiff would have made, had it been permitted to perform the contract.

The theory upon which the action was defended is that it was the duty of the plaintiff under the contract, before manufacturing the chairs, to present to the defendant for approval a sample chair of the quality and design agreed upon by the parties, and that plaintiff failed so to do, and thereupon defendant rescinded the contract. The contract was negotiated orally between the plaintiff's salesman, Kenfield, and defendant's architects, Jordan & Olive, at Winnipeg, and they reduced their agreement to writing and signed it for their respective principals on the 24th day of June, 1912. The plaintiff was designated the party of the first part and the defendant the party of the second part. The provisions of the contract thus reduced to writing, so far as material to the appeal, recite that the defendant purchased and ordered 750 "No. 102" opera chairs, at $4.40 per chair according to the specifications for the chairs thereto annexed, and agreed to pay therefor on completion of the contract, and that the plaintiff agreed to manufacture, transport, deliver, and install the chairs for use in the theater in accordance with a plan or diagram of the theater to be furnished by the defendant. The contract contained further provisions as follows:

"It is expressly understood and agreed that any verbal statements. or agreements, not incorporated in this agreement, shall not be binding on either party, and this agreement shall supersede all previous proposals. This contract is made subject to the approval of the party of the first part, and shall not be binding upon the party of the first part unless and until it shall have been passed upon and accepted by an officer of the corporation."

There was annexed to and made part of the contract printed matter and plans headed "Shipping Directions and Specifications," containing a general provision that the chairs should be "gloss finish unless otherwise specified." Following this provision were four columns, in part printed and in part blank, the first of which was headed "Specification;" the second, "Location Lower Floor Style No. 102;" the third, "Location Style No.;" and the fourth the same. The blanks were filled in to show that birchwood was to be used, and that the finish of the wood "(color, etc.)" was to be "Antiq. Mahog.;" that the color of the ends of the castings was to be gold gilt, and the middles

olive green; that the arm rests were to be "No. 15," and the description given for the backs of the chairs was "No. 102," and opposite this, and in the column headed "Location Style No.," there was written, "Edge to be 1¼″ thick, including veneer;" the description given for the seats was "Reg. Squab," and the material to be used in upholstering and the color and kind was described as "Imit. Leather No. 87," and it was stated that it was preferred that the average width of the chairs should be 19 inches. The foregoing are the material provisions of the specifications, and all of the provisions thereof that would aid in determining whether or not the chairs furnished would be in accordance with the agreement of the parties. Following these columns there were provisions to the effect:

That "any variations or change from regular style of chair must be fully specified hereon," and that the plaintiff agreed to "place chairs on board cars at Chicago not later than July 30th, under penalty of $50 per day, provided sample opera chairs ordered to-day is approved by party of second part on day received at Winnipeg. Party of the first part agree to have all opera chairs installed so they can be used in five days after arrival in Winnipeg, provided house is ready, with clear and unobstructed floor space."

It is manifest that the only theory upon which it may be said that the entire contract was reduced to writing is that this was a sale in part by sample, for without a reference to the general style of chairs manufactured and sold by the plaintiff as No. 102, and arm rests No. 15, and imitation leather No. 87, and regular squab seats, resort must be had to the parol negotiations of the parties for the complete terms of the contract. There is nothing to show the height of the chairs, either from the floor to the top of the back, or from the floor to the seat; and there is nothing to show the form, or design, or dimensions, other than that the edges of the backs of the chairs were to be 1¼ inches thick, and that it was preferred that they should be on the average 19 inches in width; but there is no provision regulating the thickness of the rest of the back, excepting by having recourse to the styles of chairs manufactured by plaintiff and known by the numbers specified.

The uncontroverted evidence shows that plaintiff's salesman exhibited five sample chairs to defendant's architects at the time the contract was negotiated, and a sample of the imitation leather used by plaintiff in upholstering chairs. It is evident that both parties understood that their contract was not sufficiently complete or definite to preclude a misunderstanding with respect to their agreement, and that they contemplated that a sample chair should be first manufactured by the plaintiff and submitted to defendant at Winnipeg for approval. The provisions of the contract relating to the sample chair are not fairly susceptible of the construction for which plaintiff contends, namely, that the only purpose thereof was to limit the time within which plaintiff was required to furnish the chairs. The plaintiff did prepare and ship a sample chair to defendant for approval on the 2d of July, after the contract was made, and on the same day it notified defendant's architects by letter that, subject to the approval of its credit department, it had "entered" the contract, and further stated

that it was shipping a sample chair for approval, and requested defendant to advise, on receipt of the sample, "if it is in accordance with your understanding, and we are quite sure that it will be more than you expected." The letter also stated that the time within which defendant had insisted upon delivery was very short, and that unless plaintiff had received prompt approval, both of the sample chair and of a plan for the seating arrangements, by telegraph, it would not agree to deliver on board cars at Chicago by July 30th, and therefore the architects were requested to give the matter immediate attention.

The sample chair reached the architects on the 5th of July. After inspecting it, they wired the plaintiff to the effect that it did not conform to the agreement and was not acceptable; that a better quality of covering was required; that the seats should be padded differently, and that there should be more padding in the backs of the seats; that the shape and size of the seats was not satisfactory, and that a corrected sample should be furnished; and that they were writing more in detail. Without awaiting the receipt of the letter plaintiff next day wired the architects that the sample was made in accordance with the contract, but saying it would await receipt of the letter.

The letter written by the architects to the plaintiff pointed out their objections to the sample chair, and specified that the imitation leather covering was unsuitable, and appeared like painted canvas, and that it was represented to them that the very best imitation leather would be used, and that that used on the sample was not such. They also pointed out that it was represented to them that the seats would be padded with sea moss, with a heavy layer or top of electric cotton, and that the sample was only padded with tow and with very coarse cotton, and gave the seats "a coarse, cheap appearance"; that plaintiff's salesman agreed that the backs of the chairs "would be fully equal" to a sample exhibited at the time the contract was negotiated, and that the back of the sample submitted for approval was at least one inch thinner than the sample according to which the contract was made; and they requested that another sample chair be made, rectifying the defects which they pointed out, and offered to allow eight days' additional time, and asked for an immediate answer by wire. Evidently there were further negotiations between the parties, as shown by the correspondence, some of which was excluded on objection by plaintiff, and which was marked for identification, and is in the record; but plaintiff failed and refused to remedy the defects pointed out in the sample chair, and the defendant placed an order for chairs elsewhere.

On the trial the court ruled as matter of law that the writing constituted the entire contract, and that evidence of the parol negotiations was not admissible for any purpose, and excluded evidence offered by the defendant to show specifically that the sample chair did not correspond with the samples exhibited during the negotiations for the contract with respect to the back, the imitation leather, the upholstering, or the seat. Evidence was given in behalf of the plaintiff tending to show that the sample chair was in accordance with the requirements of the contract; that it was made of the material called for by the contract and specifications, and was finished in accordance with the

contract; that the backs were plaintiff's "No. 102" backs; that the seats were plaintiff's regular squab seats, which were of tow and cotton; that the imitation leather used on the sample chair was the same as that exhibited when the contract was negotiated; and that the number in connection with the imitation leather referred only to the color.

The defendant, however, was not bound by this testimony, and should have been permitted to controvert it, and to show that the sample chair was not like the sample parts used in the negotiations and represented to his architects to be the same as those described in the specifications. If this were not so, fraud could be perpetrated by inducing defendant to sign a contract for a particular style of chair as the one manufactured by plaintiff and designated by a number, when in fact the chair so manufactured and designated was not as it was represented to be by the plaintiff, and defendant would be obliged to resort to a suit in equity to have the contract annulled. We think he was not obliged to take that course, but may show in defense of this action that, even though the sample chair may be the same as plaintiff's No. 102 chair, it is not the same as the samples which were represented to be like plaintiff's No. 102 chair. This is true with respect to the imitation leather, and all parts of the chair.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

SHELDON v. OTSEGO & H. R. CO. (No. 321/118.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

STREET RAILROADS ⬙⬙114—OPERATION—INJURY TO ANIMALS—SUFFICIENCY OF EVIDENCE.

    In an action against a street railroad company for negligence resulting in injuries to horses frightened by the approach of the car, whereby they ran against it, evidence *held* sufficient to sustain a verdict for plaintiff.